IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 07 CR 260 |
| WOSVALDO VILLEGAS ) | |
| ) | Judge Virginia M. Kendall |
| ) | |

## MEMORANDUM OPINION AND ORDER

On November 20, 2008, a jury convicted Defendant Wosvaldo Villegas ("Villegas") of one count of attempting to obstruct, delay, and affect commerce and the movement of United States currency in the custody, possession, and control of employees of Pendum Inc., by robbery, in violation of 18 U.S.C. §§ 1951 & 2. After the close of the government's case, Villegas moved orally for a judgment of acquittal under Fed. R. Crim. P. 29(a). The court denied Villegas' motion. Now before the Court are Villegas' renewed Motion for a Judgment of Acquittal or Arrest of Judgment under Rule 29 or for a New Trial under Rule 33. For the reasons set forth below, Villegas' motion is denied.

## BACKGROUND

Villegas was charged in a one-count Indictment with attempted robbery of an armored truck in violation of 18 U.S.C. §§ 1951 & 2. After a jury trial, Villegas was found guilty.

At trial Villegas presented an entrapment defense after the Court ruled that he had met his threshold burden by making a prima facie showing of entrapment. In support of his entrapment defense, Villegas called Dr. Jerri Morris, a neuro-psychologist to testify regarding his subnormal intelligence. At the close of the Government's case-in-chief, Villegas moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), which the Court took under

advisement and subsequently denied. Villegas now moves for a judgment of acquittal or, alternatively, for a new trial, asserting that the Court made numerous errors throughout the trial and that the evidence presented failed to establish guilt beyond a reasonable doubt.

## **DISCUSSION**

### I. Motion for Judgment of Acquittal

A motion for a judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against the defendant. *See* Fed. R. Crim. P. 29. Such a motion should be denied if, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004). A conviction should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

### A. Entrapment Defense

Villegas asserts that the Court should enter a judgment of acquittal because the Government did not prove beyond a reasonable doubt that he was not entrapped into committing the charged offense. Specifically, Villegas challenges the sufficiency of the evidence presented by the Government to establish predisposition or lack of inducement.

The defense of entrapment requires proof of two elements: 1) government inducement of the crime, and 2) the defendant's lack of predisposition to engage in the criminal conduct. *See Mathews v. United States*, 485 U.S. 58, 63 (1988). Once the defendant establishes both, the burden shifts to the government, which can defeat the entrapment defense by proving beyond a reasonable doubt

2

either that the defendant was predisposed to commit the offense or the absence of government inducement. *See United States v. Santiago-Godinez*, 12 F.3d 722, 722 (7th Cir. 1993). In assessing a defendant's predisposition to commit the offense in question, the following factors are relevant: 1) the character and reputation of the defendant; 2) whether the government first suggested the criminal activity; 3) whether the defendant engaged in the crime for profit; 4) whether the defendant demonstrated a reluctance to commit the offense that was overcome by government persuasion; and 5) the nature of the inducement or persuasion offered by the government. *See U.S. v. Higham*, 98 F.3d 285, 290 (7th Cir. 1996).

Here, the evidence introduced by the Government at trial, when viewed in the light most favorable to the Government, was more than sufficient to allow the jury to conclude that Villegas was not entrapped into committing the attempted robbery. The government introduced evidence that it was Villegas' idea to rob the armored car and not an idea suggested by the government. The government introduced evidence that Villegas came up with a plan and sought the assistance of Rudy Garibay ("Garibay"), a Cooperating Informant, and Special Agent ("SA") Araya, an undercover agent with the Federal Bureau of Investigation ("FBI") who, unbeknownst to him at the time, were working for law enforcement: The government introduced numerous recorded conversations between Villegas, Garibay and SA Araya in which Villegas actively discussed the details of the robbery, including but not limited to, what role each of them would play, the use of a rental vehicle to execute the robbery, the use of stolen plates for the robbery, the getaway route to be followed after the robbery, storage of the getaway vehicle in Villegas' garage after the robbery and splitting the proceeds from the robbery.

The government also introduced video recordings where Villegas was seen on tape having

meetings with Garibay and/or SA Araya to discuss the execution of the robbery. These meetings capture Villegas telling Garibay and SA Araya that he has an inside man who works for the armored car company but that he is not going to tell his inside man the full plan so he can pass a polygraph test if questioned by the police. The recordings also show Villegas discussing the possibility of using a taser on his inside man during the robbery. In one particular video, Villegas is sitting at a restaurant table with Garibay, looking around furtively while leaning in to discuss the robbery. In another video, taken on April 27, 2007, the day of his arrest, Villegas is seen arriving at a Walgreens parking lot to meet Garibay. Villegas pulls into the lot, leaves his car running and hands Garibay a stolen license plate to be used during the execution of the robbery. The jury also heard evidence that Villegas brought a garage door opener with him that day so that he would have access to a place to store the getaway car. The government also introduced evidence that Villegas wanted SA Araya eliminated from the robbery plan because he did not trust him and that after SA Araya was eliminated from the plan, Villegas did not chose to abandon the plan but instead went ahead with his preparations. The government also introduced evidence of Villegas criminal history, which included a prior conviction for identity theft, to demonstrate predisposition. Accordingly, viewing the evidence in the light most favorable to the government, the jury had sufficient evidence to conclude that Villegas was not entrapped into committing the charged offense.

## B. Hobbs Act Robbery

Next, Villegas asserts that he is entitled to a judgment of acquittal because there was insufficient evidence for the jury to find Villegas guilty of attempted Hobbs Act Robbery under 18 U.S.C. § 1951(a). Specifically, Villegas asserts that there was no evidence of actual force, violence or intimidation and there was no evidence that Villegas took a substantial step toward committing

4

the robbery.

The Hobbs Act, in relevant part, prohibits any robbery or attempt to rob that "in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce. *See* 18 U.S.C. § 1951(a). Under 18 U.S.C. § 1951(b), robbery requires a taking by actual or threatened force, violence or fear of injury. *See* 18 U.S.C. § 1951(b). To prove an attempt, the government must have shown only that Villegas acted with specific intent to commit the underlying offense, that is, that he intended to perform a robbery, and took a substantial step toward its completion. *See United States v. Dennis*, 115 F.3d 524, 534 (7th Cir. 1997). To commit a substantial step, Villegas must engage in "conduct strongly corroborative of the firmness of [his] criminal intent." *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985). "Preparation alone is not enough;" instead, the preparation must progress "to such a stage that the crime would have come to pass in the due course of the normal train of events had not an extraneous force . . . intervened." *United States v. Schramm*, 715 F.2d 1253, 1254-55 (7th Cir. 1983). Therefore, "the behavior must be of such a nature that a reasonable observer viewing it in the context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *Rovetuso*, 768 F.2d at 821. Factual impossibility is not a defense to an attempt crime. *See United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir. 1993).

Here, the evidence taken in the light most favorable to the government, supports the jury's guilty verdict for attempted Hobbs Act Robbery under 18 U.S.C. § 1951(a). The Government presented sufficient evidence to support a finding that Villegas intended to use actual or threatened force to rob the armored car, and there is sufficient evidence to support a finding that Villegas took a substantial step toward the committing the robbery. The government introduced evidence that

5

Villegas: 1) planned the robbery in great detail, 2) discussed the use of a taser and the possible use of a firearm to effectuate the robbery, 3) prepared vehicles for use in the robbery, 4) stole a licence plate which he gave to Garibay who put it on the getaway vehicle infront of him, 5) brought a garage door opener the day of the robbery that opened the garage where he was planning on storing getaway vehicle, 6) cased the robbery location with Garibay for hours, 7) viewed the gun, bullet-proof vest and bullets that Garibay was going to use to complete the robbery, and 8) gathered at the designated assembly point on the day the robbery was scheduled to take place. Villegas asserts that because he presented evidence that he told Garibay that no force would be necessary because he knew that the driver of the armored car would cooperate it precludes the jury from finding that Villegas intended to use actual or threatened force to rob the armored car. The Government, however, introduced evidence that Villegas did not actually have an inside man but made him up in an effort to convince Garibay and SA Araya to commit the robbery with him. The jury had sufficient evidence to find that Villegas misrepresented that he knew the driver of the armored car and for a robbery to be successful in the presence of an armored car driver, who is not implicated in the crime, at least a threat of force would presumably be required. The evidence presented by the Government at trial was sufficient to support the jury's guilty verdict for attempted Hobbs Act Robbery because it demonstrates Villegas' intent to commit the robbery and identifies substantial steps towards its commission. *See U.S. v. Turner*, 501 F.3d 59, 68-69 (1st Cir. 2007) (evidence sufficient to support attempted Hobbs Act Robbery where defendant planned offense in detail, assembled weapons and other robbery equipment, prepared vehicles, surveilled the target, practiced dry-runs, and met at a designated location on the day of the robbery); *U.S. v. Del Carmen Ramirez*, 823 F.2d 1, 2 (1st Cir. 1987) (evidence supported attempt to commit Hobbs Act Robbery where defendant admitted intent

to rob armored truck, he cased the bank, stole a car and arrived armed at the bank shortly before the truck was to arrive).

Lastly, In support of its argument that there was insufficient evidence of force and violence or intimidation, Villegas relies on this Court's decision in *United States v. Acox*, 07 CR 145, 2008 WL 4210774 (N.D. Ill. Sept. 10, 2008); however, his reliance is misplaced. *Acox* involved an attempted bank robbery under 18 U.S.C. § 2113(a) and unlike attempted robbery under § 2113 there is no intimidation element for Hobbs Act robbery. *See* 18 U.S.C. § 1951(a); *see also U.S. v. Starks*, 472 F.3d 466, 470 (7th Cir. 2006) (robbery under Section 2113(a) and Hobbs Act robbery under Section 1951(a) contain different elements). Villegas has failed to show that the evidence offered against him at trial was insufficient to sustain his conviction as a matter of law. Therefore, Villegas' motion for a judgement of acquittal is denied.

## II.  Motion for a New Trial

A motion for a new trial under Rule 33(a) should be granted only if required by "the interests of justice." Fed. R. Crim. P. 33(a). Such a motion should be granted sparingly and is only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Villegas raises ten separate grounds in support of his motion for a new trial, all of which fail to establish that it would contravene the interests of justice to let the verdict stand.

## A.  Re-Direct of Agent Burke

Villegas asserts that the Court erred when it allowed the Government to conduct a re-direct examination of Special Agent ("SA") Burke regarding the nature of the confidential informant's ("CI") relationship with Villegas. Specifically, Villegas asserts that the Court erred when it ruled

that Villegas opened the door to the Government re-directing SA Burke as to specific conversations that occurred between the CI and the Villegas prior to the attempted robbery.

"[W]hen a party opens the door to evidence that would be otherwise inadmissible, that party cannot complain on appeal about the admission of that evidence." *United States v. Gilbertson*, 435 F.3d 790, 797 (7th Cir. 2006). Here, during his cross-examination of SA Burke, Villegas inquired as to what SA Burke knew about Villegas when he began to target him for an undercover investigation with the help of what Villegas claimed was a dirty CI. Villegas also questioned SA Burke as to whether he was aware of the nature of the relationship between Villegas and the CI and as to the contents of unrecorded conversations between Villegas and the CI prior to the attempted robbery. Although SA Burke had been informed by the CI that he and Villegas had previously been involved in drug sales together, SA Burke kept this fact out and only testified that he knew that Villegas was a client of the CIs (who was in the mortgage business). SA Burke did not testify as to Villegas' previous illegal activities with the CI because the Government had previously agreed to keep this information out.

Prior to the Government's re-direct, at sidebar, the Court ruled that Villegas' line of questioning during cross-examination opened the door to the Government re-directing SA Burke regarding the full nature of Villegas' relationship with the CI. Specifically, the Court found that Villegas' cross-examination of SA Burke mislead the jury and left them with only part of the full picture. The jury was left with the impression that SA Burke only knew Villegas as the CI's mortgage customer and as an honest citizen, and that the CI repeatedly called Villegas to "pressure" him into committing the robbery; however, SA Burke was aware that Villegas and the CI knew each other from past illegal conduct, including the sale of drugs, and that Villegas had a criminal history

and prior run ins with the law. Because the jury was left with an incomplete picture, the Court permitted the Government to re-direct SA Burke as to the true nature of Villegas' relationship with the CI, including their prior illegal activities. The Court did not err in permitting the Government to re-direct SA Burke regarding the full nature of Villegas' relationship with the CI because Villegas opened the door to this line of questioning. *See United States v. Douglas*, 408 F.3d 922 (7th Cir. 2005) (upholding government's inquiry into the defendants's past criminal convictions after defendant testified that he had "never been through nothing like" the questioning he received from police after his arrest in the case in chief).

Furthermore, the Court ruled that the Government's re-direct of SA Burke as to the nature of Villegas' relationship with the CI was admissible not only because Villegas opened the door to this line of questioning but also because Villegas' previous conversations with the CI showed how the two interacted with each other and explained the way they came to know each other and why one would trust another to engage in the robbery. The Court went on to state that "while it is always relevant to some degree the way the parties interact, [it has] become more relevant based upon [Villegas'] accusation that he was coerced or challenged or pushed into doing this activity."

Evidence falls within the "intricately related" or "inextricably intertwined" doctrine if it helps to complete the story of the crime on trial, if its absence would create a chronological or conceptual void in the story of the crime, or it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove an element of the charged crime. *See United States v. Gougis*, 432 F.3d 735 (7th Cir. 2005). Here, the Court did not err in permitting the Government to re-direct SA Burke regarding prior communications between Villegas and the CI because SA Burke's testimony helped to complete the story of how the relationship between

Villegas and the CI began and how it evolved into one of a criminal nature. SA Burke's testimony regarding Villegas' previous conversations with the CI filled what would have otherwise been a chronological and conceptual void in the jury's understanding of the genesis and nature of their relationship. The evidence explained why Villegas trusted the CI and how he willingly became involved in the robbery plan; it added additional detail to the jury's view of their relationship, a relationship that Villegas put in dispute. Additionally, the Court also expressly considered the potential prejudice to Villegas and after SA Burke testified about Villegas' previous conversation with the CI, the Court provided the jury with the following limiting instruction to minimize any potential risk:

> Ladies and gentlemen, in this transcript that you were just listening to, you heard evidence of acts of the defendant other than those charged in the indictment. Those acts you may consider only on the question of the relationship between the CI and the defendant and on an issue of entrapment. You should consider this evidence only for that limited purpose and not for any other.

The Court's limiting instruction properly limited the purpose for which the evidence was admitted and reduced the possibility of unfair prejudice to Villegas. *See United States v. Luster*, 480 F.3d 551, 557 (7th Cir. 2007) (any prejudicial effect of introducing prior drug transactions as "inextricably intertwined" evidence "was blunted by the limiting instruction the district court gave . . ."). Because Villegas opened the door to Villegas' relationship with the CI by questioning SA Burke on cross-examination as to what he knew about Villegas prior to and during the investigation and because Villegas' line of questioning left the jury with the impression that Villegas' only interaction with the CI was a mortgage deal and that the CI pushed Villegas to commit the robbery during a series of unrecorded phone conversations, the Court did not err in allowing the Government to re-direct SA Burke as to his full awareness of the relationship between Villegas and the CI.

**B. Impeachment with Prior Retail Theft Conviction**

Villegas next asserts that he is entitled to a new trial because the Court erred in allowing the Government to impeach him with his prior retail theft conviction after he misrepresented to the jury regarding his criminal background. Prior to Villegas' testimony, the Court ruled that only Villegas' prior felony conviction for identity theft was admissible. While on cross-examination, the Government impeached Villegas with his prior conviction for identity theft, per the Court's ruling, and moved on to another area of cross. Later in the cross, the Government sought to impeach Villegas with his prior inconsistent statement– a sworn statement that he made to the Court in support of his entrapment defense– that he had "never been involved in criminal activity." The statement in his sworn affidavit was inconsistent with the fact that Villegas had a prior felony conviction for identity theft. When confronted with the issue, Villegas made the statement, under oath, that other than his conviction for identity theft he had never been involved in any other criminal activity. After Villegas made this statement denying his criminal background, the Court ruled that the Government was permitted to impeach Villegas with his prior conviction for retail theft.

Under Federal Rule of Evidence 609, it can be proper for the government to impeach a criminal defendant with evidence of the defendant's prior convictions. *See* Fed. R. Evid. 609(a)(1); *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000). The details of the prior conviction, however, should not be displayed to the jury. *Id*. But, when a defendant "opens the door" by offering testimony that explains away an earlier conviction or offers testimony inconsistent with the facts underlying an earlier conviction, the government may inquire into the details of the conviction. *Id*. This latitude, however, is not a "license to dwell on the details of the prior conviction and shift

11

the focus of the current trial to the defendant's prior bad acts." *Id*.

Here, the government did not dwell on Villegas' prior conviction for retail theft. It mentioned it briefly for the sole purpose of impeaching Villegas' intentional and knowingly false statement to the jury that he had no prior criminal convictions other than his conviction for identity theft. Villegas' prior conviction for retail theft was admissible because he opened the door when he denied his criminal history and the Court did not err in allowing the Government to use Villegas' retail theft conviction for impeachment purposes. *See Douglas*, 408 F.3d at 929 (defendant opened the door to evidence regarding his prior 1989 narcotics conviction that the court had previously ruled inadmissible when he testified that he had never been through anything like the police questioning to which he was exposed in connection with the current offense). Therefore, the admission of Villegas' retail theft conviction does not require a new trial.

**C. Testimony of Dr. Morris**

Next, Villegas asserts that the Court erred when it limited the testimony of Dr. Jerri Morris, the defendant's expert in neuro-psychology, by "not permitting Dr. Morris to testify regarding whether the defendant's limited intellectual ability would render him more susceptible to the pressure and inducement of the confidential informant." *See* Def.'s Mot. At ¶ 5. First, it is important to point out that Villegas' position misrepresents the Court's ruling on Dr. Morris' testimony at trial. Contrary to Villegas' contention, the Court specifically held that Dr. Morris "can opine about whether she believes, in her professional opinion, [Villegas] is more susceptible to this pressure or this type of extra persuasion." What the Court did do was rule was that Dr. Morris could not go "that extra step" and testify that Villegas "has no predisposition to commit such an offense" and that he was not entrapped into committing the robbery.

Federal Rule of Evidence 704(b) precludes an expert from stating an opinion "as to whether a defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b); *see also United States v. Bastanipour*, No. 92 CR 917, 1993 WL 359933, at *1 (N.D. Ill. Sept. 10, 1993). When a court admits expert psychiatric testimony to demonstrate increased susceptibility in entrapment cases, the expert's testimony should be limited to whether the defendant is more susceptible to and easily influenced by the urgings and inducements of other persons, and should not include an opinion on the ultimate issue of predisposition and entrapment. *See United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996) (*citing United States v. Newman*, 849 F.2d 156, 165 (5th Cir. 1988) ("expert may not offer an opinion on the ultimate issue of whether the defendant was in fact induced to commit the crime or lacked predisposition.")); *Bastanipour*, 1993 WL 359933, at *1 (holding expert's testimony "is strictly limited to whether [defendant's] mental condition made him more susceptible than the average individual to persuasion by government agents.").

Here, after overruling the Government's Daubert challenge to Dr. Morris, the Court ruled that because Villegas was raising an entrapment defense, Dr. Morris' testimony was admissible to demonstrate that Villegas' subnormal intelligence could have made him particularly susceptible to inducement. The Court allowed Dr. Morris to testify regarding the tests she performed, her conclusions as to Villegas' cognitive ability, whether he had a psychological defect or subnormal intelligence, what the defect was based on and how the defect affects his behavior, including if his behavior renders him more susceptible to outside influences. But, the Court also ruled that Dr. Morris was not permitted to give her opinion as to if Villegas was predisposed to commit a robbery or if he was entrapped into committing the instant offense. The Court did not abuse its discretion

13

in limiting Dr. Morris' testimony by not allowing her to opine on the ultimate issue of predisposition and entrapment. *See Newman*, 849 F.2d at 165; *Bastanipour*, 1993 WL 359933, at *1. Furthermore, defense counsel specifically agreed with the Court's position and made no objection to the Court's ruling. *See Wilson v. Williams*, 182 F.3d 562, 566-67 (7th Cir. 1999) (party must object to Court's evidentiary ruling to preserve the issue; grounds not presented cannot be raised later, else both judge and adversary are sandbagged).

### D. Cross-Examination of Special Agent Burke

Villegas asserts that the Court erred by not allowing defense counsel to cross-examine SA Burke about the CI's out-of-court statement to SA Burke in which he said "give me my check today." *See* Def.'s Mot. at ¶ 8. Villegas asserts that because he was not allowed to ask SA Burke about this specific statement that the CI made regarding his check for cooperation he was prevented from effectively confronting SA Burke about the CI's motive to entrap him. Hearsay is a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c); *see also United States v. Harper*, 463 F.3d 663, 667 (7th Cir. 2005). Here, Villegas had multiple opportunities to cross-examine SA Burke regarding the CI's financial motive and bias, and *did in fact* cross examine him on this very issue. Villegas elicited testimony from SA Burke that the CI was working in exchange for payment, was going to be given $2,000 for his work on the instant case and had received around $19,000 for his work on past cases. It was only when Villegas attempted to elicit a specific out-of-court statement made by the CI to SA Burke–statements that were part of a recording but were redacted and not provided to the jury–that the Court sustained the Governments objection to Villegas' question on hearsay grounds. The statement that Villegas sought to elicit was hearsay and not part of the record

14

and therefore, the Court did not err in prohibiting Villegas to cross-examine SA Burke regarding the CI's specific out of court statement.

**E. Ineffective Assistance of Counsel**

Villegas asserts that he is entitled to a new trial because his trial counsel was ineffective for failing to call the CI as a witness at trial. Under *Strickland v. Washington*, Villegas must show both that his attorney's performance was outside the range of professionally competent assistance and that the deficient performance denied him a fair trial. *See* 466 U.S. 668, 687-88 (1984). Villegas can show that he was denied a fair trial "only when it has been shown with a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Banks*, 405 F.3d 559, 568 (7th Cir. 2005). There is a strong presumption for finding counsel effective, and Villegas bears the burden of proving otherwise. *Id*. After defense counsel has considered all possible defenses, his strategic decision to pursue a particular defense and call particular witnesses to testify is rarely second-guessed on appeal. *See United States v. Adamo*, 882 F.2d 1218, 1227 (7th Cir. 1989). Additionally, the Constitution does not mandate defense counsel to call every witness that is suggested to him; to do so would be "considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990). "An appellate court will review an ineffective assistance of counsel ground only if counsel's conduct or decision was not made in the exercise of reasonably professional judgement." *Id*. (Internal citations and quotations omitted).

Here, defense counsel made a strategic decision not to call the CI as a defense witness; a wise decision unless defense counsel wanted to be charged with helping to prove the Government's

15

case. The CI was equipped with information that could severely damage Villegas' defense. Villegas asserts that the CI should have been called because he could have testified about his incentives to induce Villegas to commit the robbery, his immigration problems, and his financial arrangement with the Government. All of this information, however, was already presented at trial through other witnesses, including SA Burke. Villegas has presented nothing that demonstrates that his trial counsel failed to exercise "reasonable professional judgment" when he made a tactical decision not to call the CI as a witness at trial, and therefore he is not entitled to a new trial based on his claim of ineffective assistance of counsel.

**F. Missing Witness Instruction**

Next, Villegas asserts, without developing his argument or citing any legal authority to support his position, that the Court erred when it refused to give the defense's proposed missing witness instruction. For a missing witness instruction to be given, a defendant must show: 1) that the absent witness was peculiarly within the government's power to produce, and 2) that the testimony of the witness would elucidate issues in the case without being cumulative in nature. *See United States v. Christ*, 513 F.3d 762, 772 (7th Cir. 2008). "A witness is peculiarly within the government's power to produce when the witness is physically available only to the government, or where the witness's relationship with the government makes his testimony, in pragmatic terms, available only to the government." *Id*. The Court has broad discretion in determining whether to give a missing witness instruction. *See id*.

Here, the CI was not peculiarly within the government's power to produce; he was equally available to both the Government and Villegas. Throughout the entire trial, the CI was incarcerated pursuant to a material witness warrant previously issued by the Court and was physically brought

16

over to the courthouse and placed in the lockup so that either party could call him as a witness. Defense counsel, on the record, acknowledged that he was making a decision not to call the CI as a witness but requested the instruction merely because the CI would not submit to an interview with the defense. But, a represented witness can always choose not to be interviewed and that does not make him unavailable as a witness at trial. Furthermore, the witnesses status as a CI did not make his testimony, in pragmatic terms, available only to the government. *See United States v. Rollins*, 862 F.2d 1282, 1289 (7th Cir. 1988) (witness' status as government informant does not establish unavailability to testify for the defense). Because the CI was physically present throughout the trial and available to both parties and his relationship with the Government did not, in a pragmatic sense, make his testimony only available to the government, the Court did not err in refusing to give Villegas' proposed missing witness' instruction. *See United States v. Cochran*, 955 F.2d 1116, 1122-24 (7th Cir. 1992) (holding district courts refusal to give missing witness instruction was not error where CIs were in the building where trial was conducted and where defendant failed to provide any facts to show that witnesses were unavailable to him).

**G. Substantial Step Instruction**

Villegas asserts, again without developing his argument or citing to any legal authority to support his position, that the Court erred in accepting the substantial step instruction tendered by the Government and rejecting the one submitted by the defense. Jury instructions are reviewed as a whole and as long as they treat the issues fairly and accurately, they will not be disturbed upon appeal. *See United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007); *see also United States v. Evans*, 486 F.3d 315, 324 (7th Cir. 2007) ("We give deference to the district court's discretion concerning the specific wording of the instructions, as long as th essential elements of the offenses

17

charged are covered by the instructions given."); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) ("We give the district court substantial discretion with respect to the precise wording of jury instructions so long as the final result, read as a whole, completely and correctly states the law.").

Here, the Court gave the following "substantial step" instruction proposed by the Government:

> A substantial step is something more than mere preparation, but less than the last act necessary before the actual commission of the substantive crime. A substantial step is an act that makes it reasonably clear that had the defendant not been interrupted or made a mistake he would have completed the crime. The focus is on what acts have been completed, not what remains to be done. However, the completed acts must be strongly corroborative of the firmness of the defendant's criminal intent.

This instruction is a complete and correct statement defining the term "substantial step." *See e.g., Doe v. Smith*, 470 F.3d 331, 344 (7th Cir. 2006). Furthermore, the "substantial step" instruction given by the Court is not confusing and did not have the potential to confuse the jury, and therefore the Court did not err in accepting the Government's proposed instruction.

## H. Request for Free Trial Transcript

Lastly, Villegas asserts that he is entitled to a new trial because he was denied due process of law when the Court denied his request for a court-provided transcript of the trial proceedings for use in preparing his motion for a new trial. The Court fails to see how its denial of Villegas' request for a free trial transcript, *after the trial ended*, could possibly be grounds for granting him a new trial seeing as motions for a new trial are granted only when the "substantial rights of the defendant have been jeopardized by errors or omissions *during trial*." *Kuzniar*, 881 F.2d at 470. Nonetheless, the Court finds that it did not err when it denied Villegas' request for a court-provided transcript. Villegas requested that the Court provide him with a free trial transcript despite the fact that he had

privately retained trial counsel, retained an expert who charged thousands of dollars for her work and testimony at trial, and has privately retained counsel for the post-trial stages of his case and for his appeal. While an indigent criminal defendant is not required to pay fees for transcripts, none of the statutory schemes authorizing free transcripts pertain to criminal defendants that have adequate funds to obtain private counsel and retain experts, and none of the statutory schemes authorizes the preparation of a free transcript for use in a motion for a new trial. *See* 18 U.S.C. § 3006A; 28 U.S.C. § 1915; 28 U.S.C. § 753(f); *see also Griffin v. Illinois*, 351 U.S. 12 (1956). If Villegas had shown that he was in fact indigent, which he has not, the Court would have had the discretion to provide him with a transcript free of cost for use in his motion for a new trial. *See United States v. Banks*, 369 F.Supp. 951, 955 (D. Pa. 1974) ("[T]he *in forma pauperis* preparation of a trial transcript for use in a motion for a new trial in a federal criminal proceeding is discretionary with the court."). That being said, there is no authority for a judge to grant a motion for a free trial transcript prior to the filing of a notice of appeal for a criminal defendant that has sufficient funds to retain private counsel. *See Jones v. Banks*, No. 95-3241, 1996 WL 681329, at *1 (7th Cir. Nov. 22, 1996) (holding the district court did not err in denying defendant a free transcript where the request was made prior to filing a notice of appeal and before the court granted *in forma pauperis* status). Villegas clearly has the funds to retain private counsel and has not submitted anything to this Court to indicate that he is indigent, and therefore the Court did not err in denying his request for a free trial transcript.

## **CONCLUSION**

For the reasons stated, Villegas' Motion for Judgment of Acquittal or for a New Trial is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 11, 2009